UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
INGRID T.G.,

                     Plaintiff,        <u>DECISION AND ORDER</u>
                                            1:20-CV-5651-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In May of 2017, Plaintiff Ingrid T.G.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Olinsky Law Group, Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 17).

This case was referred to the undersigned on January 26, 2022. Presently pending are the parties' Motions for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 21,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

26). For the following reasons, Plaintiff's motion is granted, the
Commissioner's motion is denied, and this case is remanded for calculation
of benefits.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on May 27, 2017, alleging disability
beginning September 3, 2016. (T at 386-87).[2]  Plaintiff's application was
denied initially and on reconsideration.  She requested a hearing before an
Administrative Law Judge ("ALJ").  A hearing was held on April 23, 2019,
before ALJ Katherine Edgell. (T at 354). Plaintiff appeared with an attorney
and testified. (T at 357-77, 379). The ALJ also received testimony from
Esperanza Distefano, a vocational expert. (T at 377-83).

### B.    ALJ's Decision

On May 6, 2019, the ALJ issued a decision denying the application
for benefits. (T at 8-28).  The ALJ found that Plaintiff had not engaged in
substantial gainful activity since September 3, 2016 (the alleged onset
date) and met the insured status requirements of the Social Security Act
through December 31, 2021 (the date last insured). (T at 13).  The ALJ
concluded that Plaintiff's anxiety disorder; obsessive compulsive disorder;

_____

[2] Citations to "T" refer to the administrative record transcript at Docket No. 18

hypochondriasis; depression; bipolar/schizoaffective disorders; anemia; degenerative disc disease; derangement and herniated discs in the cervical and lumbar spine; fibromyalgia; chronic fatigue syndrome; and thyroid disease were severe impairments as defined under the Act. (T at 13-14).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 14).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; she can bend occasionally; and she is limited to simple, repetitive tasks requiring no more than occasional interaction with others. (T at 16).

The ALJ concluded that Plaintiff could not perform her past relevant work as a budget analyst or clinical research coordinator. (T at 22).

However, considering Plaintiff's age (42 on the alleged onset date), education (at least high school, able to communicate in English), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 22-23).  As such, the ALJ found that Plaintiff had not been under a

disability, as defined under the Social Security Act, and was not entitled to benefits for the period between September 3, 2016 (the alleged onset date) and May 9, 2019 (the date of the ALJ's decision). (T at 23).

On May 18, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on July 22, 2020. (Docket No. 1).  On June 4, 2021, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 21, 22).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on August 3, 2021. (Docket No. 26, 27).  On August 24, 2021, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 28).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.     *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises one main argument in support of her request for

reversal of the ALJ's decision.  Plaintiff contends that the ALJ's assessment

of the medical opinion evidence was flawed.

### A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical

opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013

WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application for benefits was filed on May 27, 2017 (T at 386-87), the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more

persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is

supported by relevant objective medical evidence and the medical source's

supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more

relevant the objective medical evidence and supporting explanations

presented by a medical source are to support his or her medical opinion(s)

or prior administrative medical finding(s), the more persuasive the medical

opinions or prior administrative medical finding(s) will be." 20 C.F.R. §

404.1520 (c)(1), 416.920c(c)(1).

In the present case, the ALJ discounted the opinions of four (4)

treating providers and found persuasive the assessments of two (2)

consultative examiners and a non-examining State Agency review

physician. (T at 19-21). This Court will summarize each medical opinion

and then review the ALJ's consideration of the evidence.

### 1.   *Dr. Gross*

In September of 2018, Dr. Stacey Gross, one of Plaintiff's treating

physicians, completed a fibromyalgia medical assessment form.  Dr. Gross

noted that she had been treating Plaintiff as needed since February of

2013.  (T at 808).  According to Dr. Gross, Plaintiff experiences widespread

moderate pain and signs of chronic fatigue syndrome. (T at 808-809).  Dr. Gross does not believe Plaintiff is a malingerer and noted that Plaintiff stopped working due to pain. (T at 810).  She opined that Plaintiff could sit for about 2 hours in an 8-hour workday and stand/walk for the same period. (T at 811).  Dr. Gross reported that Plaintiff would need to shift positions at will between sitting, standing, and walking about every 30 minutes. (T at 811).

Dr. Gross opined that Plaintiff could occasionally lift/carry less than 10 pounds, but never more than that. (T at 812).  She reported that Plaintiff could rarely bend and climb stairs, but never stoop, crouch, crawl, kneel, or climb ladders. (T at 812).

According to Dr. Gross, Plaintiff experiences "fuzzy" thinking and distractibility because of her impairments. (T at 813).  Dr. Gross opined that Plaintiff's impairments would interfere with her concentration 25% or more of the time during an 8-hour workday. (T at 813).  Dr. Gross reported that Plaintiff has "good" days and "bad" days and cannot tolerate even "low" stress work. (T at 813).

The ALJ found Dr. Gross's opinion not persuasive.  (T at 20).  In making this finding, the ALJ referenced Plaintiff's sporadic treating relationship with Dr. Gross, the physician's reliance on Plaintiff's subjective

complaints, the fact that Plaintiff experienced many of the referenced symptoms when she was still working, and the inconsistency between Dr. Gross's restrictive assessment as the clinical examination findings in the record, which consistently showed no neurological deficits and full muscle strength. (T at 20).

### 2.   Dr. Moster

In March of 2019, Dr. Rachel Moster, Plaintiff's treating psychiatrist, completed a medical assessment of ability to do work-related activities (mental) form.  According to Dr. Moster, Plaintiff retained "good" ability to follow work rules and maintain attention and concentration but had poor or no ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stress, or function independently. (T at 815).  Dr. Moster described Plaintiff as "unable to function at work due to ongoing somatic preoccupations leading to severe paranoia and panic …." (T at 815).

Dr. Moster opined that Plaintiff had "good" ability to understand, remember, and carry out simple and complex job instructions, but poor or no ability to behave in an emotionally stable manner or relate predictably in social situations. (T at 816).  Dr. Moster described Plaintiff as experiencing particular phobias related to computers and telephones. (T at 816).

The ALJ found Dr. Moster's opinion "not very persuasive." (T at 20). In reaching this conclusion, the ALJ referenced the fact that Plaintiff had only been treating with Dr. Moster for a short time when the opinion was rendered. (T at 20).  In addition, the ALJ noted that Dr. Moster's finding that Plaintiff could not relate to others was inconsistent with the treatment record, wherein Plaintiff was generally described as pleasant, cooperative, and able to socialize with others using the telephone. (T at 20).

*3.   Dr. Fusco*

Dr. Heidi Fusco, a treating pain management physician, completed an assessment in March of 2019.  Dr. Fusco noted diagnoses of concussion and post-concussion syndrome, bipolar depression, and psychotic features. (T at 817).  She opined that Plaintiff could never perform lifting and carrying and was limited to standing, walking, and sitting for no more than 1 hour in an 8-hour workday. (T at 817).  Dr. Fusco also assessed complete restriction in Plaintiff's ability to perform any postural or manipulative activities. (T at 818).

The ALJ found this opinion "not persuasive" because it lacked "objective findings to support such extreme limitations." (T at 21).

4.    *Dr. Kwok*

Dr. Phyllis Kwok, a treating internist, completed an assessment in April of 2019.  Dr. Kwok reported diagnoses of anxiety-depression, bi-polar anxiety, chronic fatigue syndrome, and psychosis. (T at 1169).  She opined that Plaintiff could occasionally lift/carry less than 5 pounds, but never more than that due to generalized upper extremity weakness. (T at 1169).  Dr. Kwok stated that Plaintiff could stand/walk for 2 hours in an 8-hour workday and sit for 3 hours in an 8-hour workday but would need to change position frequently. (T at 1169).

Dr. Kwok opined that Plaintiff could not perform postural activities due to generalized weakness, chronic fatigue, and herniated disc disease. (T at 1170).  She further explained that Plaintiff developed psychosis in March of 2018, resulting in "sensitivity to all chemical smells and aversion to anything electronic." (T at 1171).

The ALJ found Dr. Kwok's opinion "not persuasive" because it lacked "objective findings to support such extreme limitations." (T at 21).

5.    *Dr. Pelczar-Wissner*

Dr. Catherine Pelczar-Wissner performed a consultative examination in August of 2017.  Dr. Pelczar-Wissner diagnosed possible post-traumatic fibromyalgia, Hashimoto's, celiac disease, depression and anxiety,

13

weakness, complaints of weakness in upper extremities, and ulnar neuropathy. (T at 610). She assessed Plaintiff as having marked restriction for heavy lifting, carrying, and push/pull activities and moderate restriction with respect to bending, heavy lifting, and carrying. (T at 610). Dr. Pelczar-Wissner characterized Plaintiff's prognosis as stable. (T at 610).

The ALJ found Dr. Pelczar-Wissner's opinion persuasive. The ALJ found the assessment consistent with the consultative examiner's own clinical examination, with the clinical findings in the treatment record, and with Plaintiff's activities of daily living. (T at 19).

6.    *Dr. Antiaris*

Dr. Melissa Antiaris performed a consultative psychiatric evaluation in August of 2017. Dr. Antiaris opined that Plaintiff had no limitation as to understanding, remembering, or applying directions; mild limitation in using reason and judgment to make work-related decisions and interacting appropriately with supervisors, co-workers, and the public; and no limitation in terms of sustaining concentration and performing a task at a consistent pace or sustaining an ordinary routine or regular attendance. (T at 615-16). She assessed moderate limitation in Plaintiff's ability to regulate emotions, control behavior, and maintain well-being. (T at 616).

Dr. Antiaris described Plaintiff as having "[d]ifficulties caused by lack of motivation." (T at 616).  She opined that Plaintiff's psychiatric concerns were not "significant enough to interfere with [her] ability to function on a daily basis." (T at 616). Dr. Antiaris characterized Plaintiff's prognosis as fair. (T at 616).

The ALJ found Dr. Antiaris's opinion "somewhat" persuasive. The ALJ considered the assessment consistent with the consultative examiner's own clinical findings but found that the overall record supported the conclusion that Plaintiff's somatic symptoms and anxiety caused greater (mild to moderate) limitation in her ability to follow instructions, maintain concentration, and interact with others. (T at 19-20).

7.    *Dr. Anderson*

Dr. C. Anderson, a non-examining State Agency review physician, provided an assessment in September of 2017 to the effect that Plaintiff had mild impairment with respect to understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation as to maintaining concentration, persistence, or pace; and moderate impairment in adapting or managing herself. (T at 391).

The ALJ found this opinion persuasive and explained that the RFC determination "reflect[ed]" the limitations assessed by Dr. Anderson. (T at 20).

### 8.    ALJ's Analysis

As outlined above, the ALJ considered the treating provider opinions unpersuasive and gave greater weight to the assessments of the consultative examiners and State Agency review physician.

For the reasons that follow, this Court finds the ALJ's assessment of the medical opinion evidence not supported by substantial evidence or consistent with applicable law.

First, the ALJ was obliged to exercise particular caution given the nature of Plaintiff's impairments.  As the Second Circuit has recognized, fibromyalgia is a "disease that eludes [objective] measurement." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003). Fibromyalgia's "cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." C*abibi v. Colvin*, 50 F. Supp. 3d 213, 233 (E.D.N.Y. 2014) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). "[I]n stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical

examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 45 (2d Cir. 1991) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817–18 (6th Cir. 1988)).

Likewise, somatic symptom disorder is a condition that, by its very nature, implies an absence of underlying objective medical causes and signs.[3] Accordingly, it is "not appropriate for an ALJ to dismiss the alleged symptoms of a somatic symptom disorder based on a lack of objective findings (i.e., normal test results)." *Cathleen B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0939 CJS, 2021 WL 4472472, at *8 (W.D.N.Y. Sept. 30, 2021); *see also Lori H. v. Berryhill*, No. 3:18-CV-0472 (DEP), 2019 WL 1578195, at *4 (N.D.N.Y. Apr. 12, 2019) ("[I]t is inappropriate to reject the existence of somatoform disorder and *its disabling effects* based upon the lack of objective evidence alone.") (emphasis added).

The ALJ discounted the treating physician opinions as unsupported by and inconsistent with the objective findings, including generally

---

[3] According to the Commissioner's Regulations, somatic symptom disorder is "characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(B)(6)

unremarkable clinical examination findings. (T at 20-21).  The ALJ failed to demonstrate sufficient recognition of the fact that grossly normal clinical examination findings are not necessarily inconsistent with a claimant experiencing disabling pain and distress arising from fibromyalgia and/or somatic symptom disorder.

Likewise, the fact that Plaintiff was generally cooperative during medical appointments and capable of performing basic activities of daily living does not, without more, undermine the treating sources' belief that Plaintiff's pain and phobias would prevent her from sustaining appropriate attention, attendance, and behavior if subjected to the stress demands of work activity.  *See, e.g., Mejia v. Barnhart*, 261 F. Supp. 2d 142, 148 (E.D.N.Y. 2003)("The ALJ's finding that plaintiff's participation in solitary activities within the confines of her home and engagement in limited social activities with the assistance of her family is 'inconsistent with a disabling impairment' is not supported by medical opinion."); *Flynn v. Comm'r of SSA*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment … beyond the scope of the ALJ's authority"); *Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJ must recognize that "the

effects of a mental health issue may be different in a work setting than in a non-work setting").

Second, the ALJ did not evidence sufficient concern for the fact that the treating provider assessments are particularly probative where, as here, the claimant's symptoms (a) can be expected to wax and wane over time and (b) would likely be aggravated if she was exposed to the stress demands of competitive, remunerative work on a consistent basis.

When applying the treating physician rule, the Second Circuit recognized the value of treating source opinions when reviewing claims involving mental impairments.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

This also applies to somatic symptom disorder, which is particularly difficult to diagnose and/or evaluate based on a single encounter or examination.  *See Smith v. Comm'r of Soc. Sec.*, No. 1:19-CV-2861, 2020 WL 6136205, at *3 (E.D.N.Y. Oct. 19, 2020)("Indeed, the ALJ's own medical expert, Dr. Pollack, testified that a diagnosis of somatoform

disorder would not be made after "a single ... evaluation" and is "something that you generally come to after seeing someone over time.")(citation omitted).

Although the treating physician rule no longer applies, this important principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the new standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 U.S. Dist. LEXIS 32884, at *28 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v))); *see also Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 U.S. Dist. LEXIS 19212, at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent

with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Here, the ALJ discounted Dr. Moster's opinion because it was based on a short-term treating relationship (T at 20) but found persuasive the opinions of Dr. Pelczar-Wissner and Dr. Antiaris (who only examined Plaintiff once) and Dr. Anderson (who never examined Plaintiff).

In addition, the ALJ gave no meaningful weight to the fact that Dr. Gross had been treating Plaintiff for more than five (5) years at the time of her assessment. (T at 808).  Although treatment may not have been on a strict schedule (Dr. Gross indicated that Plaintiff treated as needed), Dr. Gross nevertheless had an opportunity to observe and treat Plaintiff over an extended period of time (unlike the physicians whose opinions the ALJ found persuasive, who either never met Plaintiff or examined her only once). *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *9 (N.D.N.Y. Feb. 22, 2021)("With respect to consistency, the ALJ should have addressed the fact that Dr. Ferrin's

opinion was an outlier among the medical opinions of record."); *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)("The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner.").

Further, it is notable that Dr. Moser, Dr. Gross, Dr. Antiaris, and Dr. Anderson all concluded that Plaintiff would have some limitation in her ability to cope with the emotional demands of work stress – they differed only as to degree (with the physicians who treated Plaintiff assessing a greater degree of limitation than those who never met her or examined her only once).

Although the ALJ is tasked with the responsibility of reconciling conflicting opinions, she was nevertheless obliged to explain her reasoning. In sum, while ALJs are not required to "reconcile every conflicting shred of medical testimony," *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981), they must discuss the evidence and factors "crucial" to the disability determination with "sufficient specificity to enable [this Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)(citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)).

Here, this meant that in finding the assessments of disabling pain and phobias unpersuasive, the ALJ was required to address and account for the fact that the treating providers were united in their belief that Plaintiff's symptom experience was plausible, pervasive, and preclusive of sustained work activity.  Further, the ALJ needed to demonstrate an awareness of the fact that, as discussed above, fibromyalgia and somatoform disorder are not amenable to easy assessment and generally require an extended opportunity for observation.

The ALJ's analysis is also undermined by her consideration of each medical opinion in isolation.  In other words, when considering consistency, the ALJ failed to adequately account for the consistency of the treating opinions *with each other.*  For example, before discounting Dr. Moster's conclusion that Plaintiff could not tolerate work stress based on her relatively short treatment history, the ALJ should have considered (and addressed) the fact that Dr. Gross reached the same conclusion based on a lengthy treating relationship.

Instead, the ALJ considered the medical opinions in isolation and did not account for the consistency of the treating provider opinions with each other. This was error.  *See Shawn H*., 2020 WL 3969879, at *7 ("Moreover,

the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other.").

In addition, as discussed above, the ALJ did not give due attention to the fact that, given the nature of Plaintiff's impairments, (a) the lack of supporting objective clinical findings was to be expected and (b) the need for a longitudinal opportunity to observe the wax and wane of symptoms was particularly important.   The ALJ's decision cannot be sustained.

B.     *Remand*

A court reviewing the denial of benefits may, in its discretion, remand a claim for further proceedings, or solely for the calculation of benefits. 42 U.S.C. § 405(g) (sentence four) (a reviewing court may enter, upon the pleadings and the administrative record, "a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing").

Where the record is complete and contains persuasive proof of disability, "no purpose would be served" by additional administrative proceedings and remand for calculation of benefits is warranted.   *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000).   Here, the record is complete and contains persuasive proof of disabling pain and phobias, as evidenced by multiple medical opinions from providers with the opportunity to observe

and treat Plaintiff.  The Commissioner does not articulate any purpose that would be served by further administrative proceedings and this Court finds none.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 21) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 26) is DENIED; this case is REMANDED for calculation of benefits; and the Clerk of the Court is directed to CLOSE the case and enter final judgment without prejudice to a timely application for attorneys' fees and costs.

Dated: March 8, 2022                    *s / Gary R. Jones*
                                        GARY R. JONES
                                        United States Magistrate Judge